IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Nos. 3:20-CR-56-KAC-JEM |
| | ) | |
| GAI TUT TEL, | ) | |
| | ) | |
| Defendant. | ) | |

**ORDER OF DETENTION**

This case came before the Court on April 22, 2026, for a detention hearing to determine Defendant's release or detention pending his revocation hearing in case number 3:20-CR-56. *See* 18 U.S.C. § 636(b). Assistant United States Attorney Kevin Quencer appeared on behalf of the Government. Attorney Sarah Olesiuk represented Defendant Gai Tut Tel, who was also present. For the reasons explained below, the Court finds Defendant shall be **DETAINED** pending revocation proceedings.[1]

## I.      BACKGROUND

After serving a term of imprisonment for a 2021 conviction for felon in possession of a firearm, Defendant began his current term of supervised release on January 8, 2026 [Doc. 78 p. 1]. On April 3, 2026, he appeared before the Court on an Amended Petition for Warrant for Offender Under Supervision ("Petition") [Doc. 78]. The Government moved for detention and Defendant requested a detention hearing [Doc. 83]. *But see United States v. Moore*, No. 20-3497, 2020 WL 6580481, at *1 (6th Cir. July 8, 2020) (explaining that "for alleged violations of supervised release

---

[1]      The Court orally announced its decision at the conclusion of the hearing. This Order of Detention memorializes the reasons for detention.

no rule or statute expressly requires a hearing before detention on a supervised release violation" (citing *United States v. Greene*, 158 F. App'x 941, 942 (10th Cir. 2005)).[2]

During the hearing, Defendant proposed release to an inpatient mental health facility and provided the Court confirmation of a bed for him, which was available the next day. Defendant also proposed working with the Knox County Health Department substance misuse harm reduction program to place a "navigator" with Defendant to work with him and support him in ensuring Defendant could meet requirements, secure housing, and become a more productive citizen. Defendant explained that if the Court ordered release on this condition, the Health Department would pick him up from the jail and transport him to the in-patient mental health facility.

In response to Defendant's proposal, the Government maintained that the facts leaned strongly toward detention to await Defendant's third revocation hearing. The Government highlighted that after Defendant's most recent release, his noncompliance began almost immediately and resulted in the commission of a local crime. The Government argued Defendant could not satisfy his clear and convincing evidentiary burden given the weight of the evidence against him, and detention should continue until the revocation hearing.

## II.    ANALYSIS

With respect to the release or detention of persons appearing for an alleged violation of probation or supervised release, the Court shall order that the defendant be detained unless it finds by clear and convincing evidence that the defendant is not likely to flee or pose a danger to the safety of others or the community, if released. 18 U.S.C. § 3143(a); Fed. R. Crim. P. 32.1(a)(6);

---

[2]    The parties briefed whether defendants accused of supervised release violations are entitled to detention hearings [*See* Docs. 85 and 87]. Defendant argued defendants facing supervised release revocation have a right to a detention hearing [Doc. 85]. While the Government questioned whether detention hearings are a matter of right for defendants on supervised release, ultimately, the Government acknowledged allowing Defendant an opportunity prove his case was "best practice in this case" [Doc. 87 pp. 5–6].

2

*United States v. McIntosh*, No. 02-CR-20049-02, 2012 WL 762614, *1 (E.D. Mich. Mar. 9, 2012) (observing that § 3143(a) "establishes a presumption in favor of detention that is rebuttable only upon the Defendant showing, by clear and convincing evidence, that he or she is not likely to flee or pose a danger to any other person or the community"). The defendant bears the burden of showing that he will not flee or pose a danger to others or the community. Fed. R. Crim. P. 32.1(a)(6). In evaluating whether Defendant presents a danger or a flight risk, the Court has looked to the § 3142(g) factors. *See United States v. Tolbert*, Nos. 3:09-CR-56 & 3:10-CR-30, 2017 WL 6003075, at *5 (E.D. Tenn. Dec. 4, 2017) (considering § 3142(g) factors in determining "whether the defendant's release is proper under § 3143(a)(1)"); *but see Moore*, 2020 WL 6580481, at *2 (finding the district court erred in "conflat[ing] the standards for pretrial bail from § 3142(g) and those for release pending a revocation proceeding under § 3143(a)(1)"). As discussed below, those factors weigh in favor of Defendant's detention pending revocation proceedings.

The Court first examines the nature and circumstances of the charged offenses, including whether the defendant is charged with a crime of violence or terrorism or involves a controlled substance, minor victim, firearm, or explosive or destructive device. 18 U.S.C. § 3142(g)(1). On February 5, 2026, while on supervised release for approximately one month, Knox County Sheriff's Office deputies arrested Defendant, charging him with simple possession; evading arrest; resist stop, arrest, search (no weapon); and criminal impersonation [Doc. 78 p. 3]. The arrest resulted from a report by a convenience store employee of a potential aggravated assault after Defendant was refused free coffee [*Id.*].[3] Officers found .24 grams of methamphetamine in

---

[3] The narrative from the Affidavit of Complaint filed regarding Defendant's February 2026 arrest stated the employee told officers Defendant and his companion flashed "what appeared to be a weapon," but there is no other indication from Knox County deputies that there was a weapon involved [*See* Doc. 78 p. 3].

Defendant's pocket, which the Government characterized at the hearing as a "user amount" [*Id.*]. Methamphetamine, however, is a dangerous drug in any amount. *See United States v. Bishop*, No. 6:06-CR-10, 2019 WL 2427964, at \*5 (E.D. Ky. May 9, 2019), *report & recommendation adopted by* 2019 WL 2427951 (E.D. Ky. June 10, 2019) (describing methamphetamine as a "dangerous drug"). Additionally, Defendant's participation in the escalation of the events at the convenience store as outlined in the Petition and proffered by the Government indicates dangerousness.

The Court next examines the weight of the evidence of Defendant's dangerousness. 18 U.S.C. § 3142(G)(2); *see also United States v. Stone*, 608 F.3d 939, 948 (6th Cir. 2010) (observing that factor (g)(2) "goes to the weight of the evidence of dangerousness, not the weight of the evidence of the defendant's guilt"); *United States v. Villegas*, No. 3:11-CR-28, 2011 WL 1135018, at \*8 (E.D. Tenn. Mar. 25, 2011) ("In other words, this factor goes to how convincing the government's arguments of dangerousness and risk of flight are." (citation omitted)). Here, the Government argued that Defendant is a flight risk with no respect for the law or conditions placed on him by the Court. Additionally, the Government maintained release was inappropriate, particularly considering that Defendant was facing his third revocation since his original sentence [Doc. 78 p. 1]. Defendant argued that his plan to be released to the inpatient mental health facility mitigates any potential danger or risk of flight because the Health Department navigator would "walk with him" and make sure Defendant met his Court-mandated requirements. Yet, Defendant was released from the Bureau of Prisons on January 8, 2026, and upon his release, Defendant is alleged to have failed to contact or report to his probation officer as required [*Id.* at 2]. When he was arrested after a verbal altercation with a convenience store clerk, Defendant allegedly attempted to flee and provided false identification [*Id.* at 3]. Officers searched

Defendant incident to his arrest and found methamphetamine in his pocket [*Id.*]. Defendant's continued noncompliance increases his dangerousness to the community and risk of flight.

The Court next considers Defendant's history and characteristics. 18 U.S.C. § 3142(g)(3)(A). Defendant's history and characteristics are outlined in the Presentence Investigation Report [Doc. 31, SEALED], which the Court has reviewed. Defendant has an extensive criminal history, including arrests for drug offenses, theft, and aggravated assault [Doc. 78 p. 4]. *See United States v. Tolbert*, Nos. 3:09-CR-56 & 3:10-CR-30, 2017 WL 6003075, at *4 (E.D. Tenn. Dec. 4, 2017) (holding that "the court may consider both actual convictions and mere arrests or indictments to assess the defendant's dangerousness, though the latter will typically weigh less heavily in favor of detention"); *United States v. Acevdo-Ramos*, 755 F.2d 203, 209 (1st Cir. 1985) (finding that judges may "rely on a defendant's past bad conduct that had led to indictment but not conviction" under some circumstances). The underlying conviction in this case was felon in possession of a firearm and ammunition [*Id.* at 1]. But even more, since serving his initial sentence, Defendant's supervised release has been revoked twice [*Id.*].[4] *See United States v. Sykes*, 453 F. Supp. 3d. 1011, 1017 (E.D. Mich. Apr. 13, 2020) ("Given his past criminal conduct . . . and apparent disregard for the terms of his probation, [the defendant's] history and characteristics weigh strongly in favor of detention."), *aff'd*, 2020 WL 4036213 (6th Cir. July 15, 2020).

Finally, the Court must consider "the nature and seriousness of the danger to any person or the community that would be posed by the person's release." 18 U.S.C. § 3142(g)(4). The Court finds Defendant poses a danger to the community due to his involvement in possessing

---

[4] At the hearing, Defendant pointed out that the underlying charges leading to his prior revocation proceedings were dismissed in March in Knox County General Sessions Court. As explained, however, the Court may consider arrests in its assessment although with less weight than convictions.

methamphetamine and extensive criminal history. *See United States v. Morgan*, 657 F. Supp. 3d 976, 983 (E.D. Mich. 2023) ("Society as a whole is the victim when illegal drugs are being distributed in its communities." (quoting *United States v. Green*, 532 F.3d 538, 549 (6th Cir. 2008))). Additionally, Defendant continues to exhibit a pattern of behavior indicating an unwillingness to abide by the Court's conditions. *See United States v. Pacheco*, No. 3:21-CR-00022, 2021 WL 5979531, at *1 (E.D. Ky. Dec. 17, 2021) ("[C]ondition effectiveness inherently hinges on a defendant's predicted good faith compliance.").

Defendant argues his plan to be released to an inpatient mental health facility, along with the assignment of a Knox County Health Department navigator, alleviates danger and risk of flight by allowing Defendant an opportunity to address his issues. But this navigator would not serve as a third-party custodian, and even if the navigator were to serve in this role, the Court would have concerns about Defendant's compliance with conditions given his noncompliant past. Defendant points to no other conditions or set of circumstances showing that he will not flee or pose a danger to others or to the community. Fed. R. Crim. P. 32.1(a)(6).

In sum, Defendant fails to carry his burden of showing by clear and convincing evidence that he is not a danger to the safety of others or the community if released. Therefore, Defendant is **ORDERED DETAINED** pending the resolution of his revocation proceedings. For the reasons discussed herein, the Court **ORDERS** as follows:

(1) Defendant Tut Tel is **ORDERED DETAINED** pending further proceedings in his revocation hearing;

(2) Defendant is committed to the custody of the Attorney General or his designated representative for confinement in a correction facility separate, to the extent practicable, from persons awaiting or serving sentences or being held in custody pending appeal;

(3) Defendant shall be afforded a reasonable opportunity for private consultation with defense counsel; and

6

(4) on order of a court of the United States or on request of an attorney for the government, the person in charge of the corrections facility shall deliver the Defendant to the United States Marshal for the purpose of an appearance in connection with a court proceeding.

**IT IS SO ORDERED.**

ENTER:

Jill E. McCook
United States Magistrate Judge

7